Filed 4/19/22  P. v. Trujillo CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B306795 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA388223-03) |
| v. | |
| SALVADOR TRUJILLO, | |
| Defendant and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Ronald S. Coen, Judge.  Affirmed.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Amanda V. Lopez and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

Salvador Trujillo, convicted of first degree murder in January 2018 after pleading no contest to the charge, appeals the superior court's denial of his petition for resentencing pursuant to Penal Code section 1170.95,[1] arguing the court either engaged in impermissible fact finding at the prima facie stage of the resentencing process or made an improper evidentiary determination of his ineligibility for relief based on uncited portions of preliminary hearing transcripts. Even if the procedures followed by the superior court in this case did not fully comply with the requirements subsequently established by *People v. Lewis* (2021) 11 Cal.5th 952, 963 (*Lewis*) and Senate Bill No. 775 (Stats. 2021, ch. 551, § 2) (Senate Bill 775), because the record of conviction demonstrated Trujillo's ineligibility for resentencing as a matter of law, any possible errors were harmless. (See *People v. Mancilla* (2021) 67 Cal.App.5th 854, 864 [petitioner is ineligible for relief as a matter of law if the record of conviction establishes he or she was not convicted under a theory of liability affected by the 2019 amendments to the law of murder].)[2] We affirm.

---

[1]  Statutory references are to this code.

[2]  The right to a postconviction proceeding for possible resentencing pursuant to section 1170.95 is purely a creation of state law. We evaluate nonstructural state law error under the harmlessness standard set forth in *People v. Watson* (1956) 46 Cal.2d 818. (*People v. Gonzalez* (2018) 5 Cal.5th 186, 195.) That standard requires us to evaluate whether the petitioner has demonstrated it is ""*reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.*"" (*Ibid.*)

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Trujillo's Conviction for First Degree Premeditated Murder*

Jonathan Najera and Trujillo were members of the San Fer criminal street gang, a Sureño gang controlled by the Mexican Mafia. Trujillo and Najera were charged with attempted murder in a gang-related case filed in March 2008. Najera made statements to the police that implicated Trujillo as the shooter. After Najera's statements were used at Trujillo's preliminary hearing, Trujillo pleaded guilty to attempted murder. Trujillo's plea was entered in November 2010, but he was not sentenced until March 29, 2011 (to a 29-year state prison term).

Najera pleaded guilty to the attempted murder charge and was sentenced on February 25, 2011 (to a nine-year state prison term). He was murdered four days later, on March 1, 2011, while in custody at the Los Angeles County Men's Central Jail. An autopsy determined the cause of death to be asphyxia by ligature strangulation with contributing factors of blunt force trauma to the neck and torso.

Investigation of Najera's murder was assigned to Los Angeles County Sheriff's Deputy Frances Hardiman, who had a background in gang enforcement and was more generally investigating the activities of the Mexican Mafia at the Men's Central Jail. Deputy Hardiman had recruited an informant (a defendant in a case involving the in-custody murder of an MS-13 shot caller) who was able to record conversations and intercept handwritten notes relating to Najera's murder.[3] One note, via an

---

[3] The informant gave the notes ("kites") to Hardiman, who had them copied and, on occasion, DNA tested, and then returned to the informant for delivery to the intended recipient.

3

intermediary, from Trujillo to Eulalio Martinez, who controlled the Mexican Mafia at the jail, indicated Trujillo had provided information to prominent gang members showing Najera had incriminated Trujillo in the 2008 gang shooting. Based on intercepted notes, as well as conversations recorded by the informant, it was determined that, as a result of this information, Najera had been killed by his cellmates, Jose Gomez and Willie Zuniga, acting at Trujillo's behest.

Gomez, Zuniga, Trujillo and several others were charged in an information filed on May 21, 2012 with first degree murder (§ 187, subd. (a)) and conspiracy to commit murder (§§ 182, subd. (a)(1), 187, subd. (a)) with special-circumstance allegations that the murder had been committed by lying in wait (§ 190.2, subd. (a)(15)) and the defendants were participants in a criminal street gang (§ 190.2, subd. (a)(22)). The information also alleged Trujillo had a prior serious felony conviction (attempted murder) within the meaning of section 667, subdivision (a), and the three strikes law. (§§ 667, (b)-(i), 1170.12.) An amended information, which named only Trujillo and Zuniga as defendants, was filed January 24, 2018 with the same charges and special allegations.

On January 31, 2018, after a jury was empaneled and the court ruled a statement by Gomez was inadmissible as untrustworthy, both Trujillo and Zuniga pleaded no contest to one count of first degree murder (which had been charged as murder "with malice aforethought"). Counsel stipulated there was a factual basis for the pleas based on the police reports and preliminary hearing transcript.[4] The conspiracy count and

---

[4] Deputy Hardiman, the deputy medical examiner who performed the autopsy, the sheriff's deputy who discovered

4

special-circumstance and prior conviction allegations were dismissed. Trujillo was sentenced to an indeterminate state prison term of 25 years to life.

2. *Trujillo's Petition for Resentencing*

On September 5, 2019 Trujillo, representing himself, filed a petition for resentencing under section 1170.95 and requested the court appoint counsel to represent him in the resentencing proceedings. Trujillo checked boxes on the printed form petition to establish his eligibility for resentencing relief, including the boxes stating he had pleaded guilty to first or second degree murder in lieu of going to trial because he believed he could have been convicted of murder at trial pursuant to the natural and probable consequences doctrine, he was not the actual killer, and he could not now be convicted of first or second degree murder because of changes made to sections 188 and 189 by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437).

The court appointed counsel to represent Trujillo. The prosecutor filed an opposition to the petition, arguing Trujillo had been convicted as a direct aider and abettor of the murder, acting with express malice, and, therefore, was ineligible for resentencing relief. The evidence supporting this argument, the prosecutor stated, was "derived from the preliminary hearing transcripts." Following a hearing on January 30, 2020 at which Trujillo's appointed counsel stated he was not filing a reply to the People's opposition memorandum, the court issued an order to show cause.

---

Najera in his jail cell and several gang experts testified at the preliminary hearing.

5

Notwithstanding his statement at the January 30, 2020 hearing, Trujillo's counsel filed a reply memorandum on July 1, 2020, arguing the prosecutor could not prove beyond a reasonable doubt that Trujillo "harbored specific intent to kill the victim, or even that he engaged in any conduct designed to cause the death of the victim."

At the evidentiary hearing on July 6, 2020, which the court identified as the "formal hearing" pursuant to section 1170.95, the court stated it had reviewed the petition, the prosecutor's response and Trujillo's reply memorandum and had read the preliminary hearing transcript. Both the prosecutor and Trujillo's counsel responded to the court's inquiry that they had no new or additional evidence to present.

The court, citing *People v. Reed* (1996) 13 Cal.4th 217, ruled the certified preliminary hearing transcript was properly considered as part of the record of conviction.

Trujillo filed a timely notice of appeal.

## DISCUSSION

1. *Senate Bill 1437 and the Section 1170.95 Petition Procedure*

Senate Bill 1437 substantially modified the law relating to accomplice liability for murder, eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*)) and significantly narrowing the felony-murder exception to the malice requirement for murder. (§§ 188, subd. (a)(3), 189, subd. (e); see *Lewis*, *supra*, 11 Cal.5th at

p. 957.)[5] It also authorized, through new section 1170.95, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime. (See *Lewis*, at p. 957; *Gentile*, at p. 843.)

If the section 1170.95 petition contains all the required information, including a declaration by the petitioner that he or she is eligible for relief (§ 1170.95, subd. (b)(1)(A)), the court must appoint counsel to represent the petitioner, if requested (§ 1170.95, subd. (b)(3)), and direct the prosecutor to file a response to the petition, permit the petitioner to file a reply and determine if the petitioner has made a prima facie showing that he or she is entitled to relief. (§ 1170.95, subd. (c); see *Lewis*, *supra*, 11 Cal.5th at pp. 962-963.)

In determining whether the petitioner has carried the burden of making the requisite prima facie showing he or she falls within the provisions of section 1170.95 and is entitled to relief, the superior court properly examines the record of conviction, "allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, *supra*, 11 Cal.5th at p. 971.) However, "the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his

---

[5]     As amended by Senate Bill 775 the ameliorative provisions of Senate Bill 1437 now also apply to attempted murder and voluntary manslaughter.

or her factual allegations were proved.  If so, the court must issue an order to show cause. . . .  However, if the record, including the court's own documents, contain[s] facts refuting the allegations made in the petition, then the court is justified in making a credibility determination adverse to the petitioner." (*Id*. at pp. 970-971, internal quotation marks omitted.)

If the section 1170.95, subdivision (c), prima facie showing has been made, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts.  (§ 1170.95, subd. (d)(1).)  At the hearing the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing.  (§ 1170.95, subd. (d)(3).)  The prosecutor and petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.  (See *Gentile*, *supra*, 10 Cal.5th at pp. 853-854.)

2. *Any Procedural Errors in Denying Trujillo's Petition Were Harmless*

Trujillo faults the superior court for not expressly finding he had made a prima facie case for resentencing relief pursuant to section 1170.95, subdivision (c), at the January 30, 2020 hearing before issuing an order to show cause and for relying generally on the transcripts from the preliminary hearing to conclude the prosecutor had proved he was guilty of murder under California law as amended by Senate Bill 1437, without specifically identifying the testimony on which it relied for that finding.  Trujillo also argues the preliminary hearing testimony was not admissible at the evidentiary hearing and his no contest plea did not include an admission he had acted with express

8

malice (an intent to kill) in directly aiding and abetting the murder of Najera.  To the contrary, he contends, it would be consistent with the evidence and his plea for him to be found guilty of murder as a natural and probable consequence of aiding and abetting only an aggravated assault on Najera.

Trujillo's wholesale challenge to the use of the preliminary hearing transcripts at the evidentiary hearing to prove he is guilty of murder under the current versions of sections 188 and 189 is misplaced.  Although it is true a prosecutor's description of testimony, as opposed to the testimony itself, is not evidence, the superior court stated it had read the transcripts before ruling on Trujillo's petition.  And whatever the import of *People v. Reed*, *supra*, 13 Cal.4th 217, on the use of preliminary hearing testimony in subsequent proceedings—a topic Trujillo and the Attorney General debate at some length in their appellate briefs—section 1170.95, subdivision (d)(3), now expressly authorizes the use of preliminary hearing testimony at the evidentiary hearing, subject to one important exception.  As amended by Senate Bill 775, that subdivision provides, "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. . . .  However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872[6] shall be excluded

---

6       Section 872, subdivision (b), provides the finding of probable cause at a preliminary hearing may be based, in whole or in part, on testimony by a law enforcement officer "relating the

9

from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule."

Trujillo does not argue any testimony given at his preliminary hearing was hearsay admitted solely under section 872, subdivision (b), that should have been excluded at the section 1170.95, subdivision (d)(3), evidentiary hearing. Nor does he contend, if the evidence from the preliminary hearing was properly considered (which he disputes), that evidence was insufficient to support the superior court's finding beyond a reasonable doubt that he had directly aided and abetted the murder of Najera—a theory of liability unaffected by the 2019 amendments to the law of murder. (*Gentile*, *supra*, 10 Cal.5th at p. 848 ["Senate Bill 1437 does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought"].) Although Trujillo complains the superior court did not actually cite the portions of the testimony on which it based its finding the prosecutor had carried his burden of proof, nothing in section 1170.95 or the case law interpreting it requires the court to do so. (In contrast, section 1170.95, subdivision (c), provides, "If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so.")

There is, however, an even more fundamental flaw in Trujillo's argument urging us to reverse the order denying his petition and to remand the case for sentencing on the target crime of aggravated assault. As the superior court observed, and as the Attorney General argues on appeal, the theory of the case against Trujillo was always that he initiated, and directly

---

statements of declarants made out of court offered for the truth of the matter asserted."

instigated, the killing of Najera for having cooperated with the police and was, as a result, guilty of first degree, express malice murder, not murder under the natural and probable consequences doctrine. In addition to the first degree murder charge, Trujillo was charged with a conspiracy to commit murder, which requires proof of intent to kill. (See *People v. Swain* (1996) 12 Cal.4th 593, 602, 607.) Trujillo was also charged with two special circumstances—lying in wait (§ 190.2, subd. (a)(15)) and gang murder (§ 190.2, subd. (a)(22))—both of which require proof the defendant personally intended to kill the victim. Most importantly, when Trujillo pleaded no contest in January 2018 as his trial began, he could not have been convicted under the natural and probable consequences doctrine of the nontarget crime of first degree murder as an aider and abettor of the target offense of assault.[7]

In *People v. Chiu* (2014) 59 Cal.4th 155*, 158 (*Chiu*) the Supreme Court restricted the reach of the natural and probable consequences doctrine in murder cases, holding an aider and abettor of a nonhomicide target offense may not be convicted of first degree premeditated murder under the doctrine. (*Id.* at pp. 158-159.) The Court explained, "Aider and abettor culpability under the natural and probable consequences doctrine is vicarious in nature. . . . 'Because the nontarget offense is

_____

[7] Trujillo does not contend he is entitled to resentencing relief by virtue of Senate Bill 1437's changes to the law of felony murder. Even prior to Senate Bill 1437's limitation of the felony-murder rule, assault was not identified in former section 189 as a basis for a charge of first degree felony murder; and the merger doctrine precluded its application to second degree felony murder. (See *People v. Farley* (2009) 46 Cal.4th 1053, 1118-1119; *People v. Chun* (2009) 45 Cal.4th 1172, 1200.)

11

unintended, the mens rea of the aider and abettor with respect to that offense is irrelevant and culpability is imposed simply because a reasonable person could have foreseen the commission of the nontarget crime.'" (*Id*. at p. 164.)  The Court continued, "First degree murder, like second degree murder, is the unlawful killing of a human being with malice aforethought, but has the additional elements of willfulness, premeditation, and deliberation, which trigger a heightened penalty.  [Citation.]  That mental state is uniquely subjective and personal.  It requires more than a showing of intent to kill; the killer must act deliberately, carefully weighing the considerations for and against a choice to kill before he or she completes the acts that caused the death.  [Citations.]  . . . [T]he connection between the defendant's culpability and the perpetrator's premeditative state is too attenuated to impose aider and abettor liability for first degree murder under the natural and probable consequences doctrine, especially in light of the severe penalty involved and the above stated public policy concern of deterrence." (*Chiu,* at p. 166.)

Trujillo's jury was empaneled and he pleaded no contest to first degree murder more than three years after *Chiu* was decided.  As the superior court properly found, by admitting he was guilty of first degree murder, he necessarily admitted to aiding and abetting a murder with express malice.  As such, he was ineligible for resentencing relief as a matter of law.  Any minor procedural errors that may have been committed by the superior court were harmless.

## DISPOSITION

The postjudgment order denying Trujillo's petition for resentencing under section 1170.95 is affirmed.


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.